IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANGEL BURRIS, Individually and on
Behalf of all others similarly situated                                                PLAINTIFF

v.                              CIVIL NO. 3:23-03008-TLB

BAXTER COUNTY REGIONAL HOSPITAL, INC.                                        DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Angel Burris, a former employee of Baxter County Regional Hospital, Inc., brings this Fair Labor Standards Act ("FLSA") action both individually and on behalf of a collective of health care employees who she alleges was subjected to the same unlawful wages policies by Baxter. (Doc. 2). Before the Court is a Motion for Conditional Certification and Court-Authorized Notice (Doc. 42) filed by Burris as well as Baxter's response (Doc. 47) and Burris' reply. (Doc. 48). The Motion was referred to the undersigned by U.S. District Judge Timothy L. Brooks pursuant to provisions of 28 U.S.C. §§ 636(b)(1) and (3).

Burris moves for conditional certification of a collective action pursuant to the FLSA, a federal statute governing minimum wages, maximum hours worked and overtime compensation. The statute allows an action to be brought "by one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of lawsuit requires that each potential plaintiff "opt in" or "give his consent in writing to become such a party" to a collective claim for unpaid wages. *Id*.

### I.    COLLECTIVE ACTIONS

FLSA authorizes collection actions under Section 216(b), but the statute is silent as to what standards and procedures courts should use to determine whether a putative collection is "similarly

1

situated" and thus allows notice to be sent to the potential members.  Nor has the Eighth Circuit announced standards that district courts must use in evaluating FLSA collective actions.  In the absence of such guidance, numerous district courts in this Circuit, including in the Western District, have approved a two-step certification process laid out by the Fifth Circuit.  *See Godwin v. K-Mac Enters., Inc.,* 2020 WL 1044016, at *1 (W.D. Ark. March 2, 2020)(citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) (explaining the prevailing approach used by district courts in the Eighth Circuit for certifying collection actions); *see also Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. March 27, 2013) (same); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same).  Under this approach, collective action certification is divided into two stages: (1) notice stage and (2) the opt-in or merits stage.  *Mooney*, 54 F.3d at 1213-14.

During the notice stage, the court "makes a decision – usually based on the pleadings and affidavits that have been submitted – whether notice should be given to potential class members." *Id.* at 1213.   If the court allows for notification, the court typically creates a conditional certification of a representative class and allows notice to be sent to the potential opt-in plaintiffs. *Id.* at 1214.   At the second step, the court determines whether the class should be maintained through trial.  *Resendiz-Ramirez v. P & H Forestry, LLC,* 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007). Typically, the second step is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete.  *Id.*  If the court decides to decertify the class, the opt-in class members are dismissed from the suit without prejudice and the case proceeds only for the class representative(s) in their individual capacities.  *Id*.

At this initial stage, the undersigned must first consider whether a plaintiff has sufficiently demonstrated that she is "similarly situated" to the potential members of the collective action. "To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.,* 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.,* 230 F.R.D. 574, 577 (N.D. Iowa 2005)). The plaintiff's burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated." *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns,* 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)). Still, "'more than mere allegations' are required" for a plaintiff to carry her burden. *Tegtmeier v. PJ Iowa, L.C.,* 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

When conducting this certification analysis, the court does not make findings on legal issues or focus on whether there has been an actual violation of the law. *Godwin v. K-Mac Enterprises, Inc.,* 2020 WL 1044016 (W.D. Ark. March 4, 2020). The court similarly does not make credibility determinations or resolve contradictory evidence presented by the parties. *Id.* Instead, the court determines whether, under the lenient standard applicable to the notice stage, the named plaintiffs, through pleadings and declarations, have demonstrated they are similarly situated to the potential collection action members. *Id.*

While Section 216(b) does not define the phrase "similarly situated," the Eighth Circuit has helped fill that gap, explaining that plaintiffs may be similarly situated if "they [all] suffer from a single, FLSA-violating policy." *Bouaphakeo v. Tyson Foods, Inc.,* 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded,* 136 S.Ct. 1036 (2016). When determining whether the plaintiff is

3

similarly situated to the proposed members, district courts in the Eighth Circuit have considered a variety factors – no single one of which is dispositive – including: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether they were subjected to the same policies and practices, established in the same manner by the same decision-maker; (4) whether the alleged violations occurred during the same period; and (5) the extent to which the acts constituting the alleged violations are similar. *Thornton v. Tyson Foods, Inc.,* 2023 WL 4712035, at *3 (W.D. Ark. July 24, 2023), citing *Watson v. Surf-Frac Wellhead Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (other citations omitted). While the burden of proof borne by plaintiff at the notice stage remains relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.,* 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009). "A class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations in the case." *Tamez v. BHP Billiton Petroleum (Ams.), Inc.,* No. 5:15-CV-330-RP, 2015 WL 7075971, at *4 (W.D. Tex. Oct. 5, 2015); *see also Perez-Benites v. Candy Brand, LLC,* 2008 WL 4809105, at *3 (W.D. Ark. Oct. 31, 2008) ("The 'similarly situated' determination requires only a modest factual showing; it does not require the plaintiff and the potential class members to show that they are identically situated.").

## II. ANALYSIS

According to the Complaint and Declarations submitted from Burris (Doc. #43-2), Kathy Bodenhamer (Doc. 43-3), Haley Bennett (Doc. 43-4), Lisa Oakley (Doc. 43-5) and Carilla Zirkle Doc. 43-6), there is a class of similarly situated nonexempt employees of Baxter who, from January 24, 2020 to present, has not been paid for all hours they worked and/or for all overtime work

performed due to Baxter's practice of deducting – from daily hours worked – a 30-minute meal period whether or not the employee worked through the meal period. Burris points to Baxter's policy, providing that "[d]uring each shift, one 30-minute meal period is allowed" and "meal periods are unpaid, uninterrupted time away from the work area." (Doc. 43-1, p. 17). Burris says Baxter's policies applies to "all personnel who work at least a 6.5 hour shift" and provides that where an employee "does not receive a 30-minute uninterrupted meal period," the employee "must cancel the meal period via the automated phone Time & Attendance System" to be compensated for the missed meal break. (Doc. 43-1, p. 17). Burris says that despite this policy, she and others similarly situated regularly (i.e., "most days") worked through their 30-minute meal break but were deterred or discouraged from using the Time & Attendance System to cancel the meal break; Burris says she was paid for her missed meal break only "a handful" of times. (Doc. 43-2, ¶¶ 8, 17, 18).

Burris was employed at Baxter as a licensed practical nurse (LPN) and was primarily responsible for providing patient care, administering medicine, charting patients' histories, and treatments, preparing patients for exams and treatments, and generally assisting physicians and staff. (Doc. 43-2, ¶¶ 3-4). RNs Bodenhamer and Zirkle attest to similar responsibilities for patient care and assisting physicians. (Doc. 43-3). Bennett, an LPN, and Oakley, an endoscopy technician, describe similar patient responsibilities. (Doc. 43-4, 43-5). Declarants each affirm they were hourly employees who automatically received the 30-minute meal deduction (described by some as the "auto-deduct policy") to their hours worked regardless of whether they received a bona fide meal break; that they regularly worked without a bona fide meal break of 30 minutes – with several noting they were unable to leave the facility or use their meal break for other tasks; that supervisors knew employees were regularly working long shifts with no meal break; and that each regularly worked more than 40 hours per week. *See, e.g.,* Docs. 43-2, 43-3, 43-4, 43-5, 43-6. Burris,

Bodenhamer and Zirkle say they were deterred and discouraged from canceling the meal deduction as Baxter's written policy allowed; these employees say they were lectured in staff meetings and understood canceling the meal deduction could subject them to discipline. *See, e.g.,* Docs. 43-2, 43-3, 43-6.

Baxter opposes conditional certification on several grounds, first arguing that Burris has not established she is similarly situated to the four consent plaintiffs or to the other hourly nonexempt employees at Baxter, describing the five (5) declarations as overly general and boilerplate. Baxter points out that its written policy for cancelling the meal deduction (for the employee to be paid) was included in the Employee Handbook provided to all employees. Baxter describes the meal deduction cancellation policy as easy to understand and easy to implement as it did not require supervisor approval and frequently was utilized by employees. Baxter says Burris was supervised and trained by Shannah O'Dell who attests she instructed Burris how to cancel the meal deduction, observing that Burris personally canceled the meal deduction on 2 occasions while employed between March 8, 2021, and December 16, 2021 (working 7pm to 7am, and regularly working overtime) and Burris "logged" missed breaks on 2 occasions, prompting O'Dell to cancel 2 meal deductions for Burris. O'Dell adds that Burris never raised any problems or concerns about canceling the meal deduction. (Doc. 47-2).

Baxter then says the other consent plaintiffs worked in varying positions at different facilities with different supervisors, rates of pay and lengths breaks (i.e., Baxter says at some point, breaks were 60 and not 30 minutes at one location). Through declarations from its supervisory employees, Baxter attests that Zirkle, Oakley and Bennett never advised their supervisors about missed meal breaks or indicated any problem canceling the meal break deduction. Baxter also points out that Bennett resigned for falsifying her time record and dishonesty during an

investigation. (Doc. 47-3, 47-4, 47-6).  With respect to Bodenhamer, Baxter attests she canceled the meal deduction on occasion and never reported any problems to her supervisor.  (Doc. 47-7). In its brief, Baxter argues Burris has not provided any evidence that any nonexempt hourly employee was disciplined for canceling a meal deduction.  Baxter provides declarations from two employees willing to say the method of canceling the deduction via the Time & Attendance System or via paper logbooks was easy, frequent, and never discouraged by Baxter. (Doc. 47-8, 47-5).  On the contrary, these employees say training was provided on how to cancel the meal deduction and they never had any problems with it.   (Doc. 47-8, 47-5).

Baxter argues the differences among Burris and the consent plaintiffs is not only problematic but reflective of a larger problem:  Because Baxter has 120 separate "cost centers" and 2,000 employees with different roles and differing supervisors at multiple facilities across 2 states, a collective action would require an individual, fact-specific inquiry on the issues of liability and damages which would not be efficient.   For all these reasons, Baxter objects to certification.

The undersigned has considered that while Burris and the consent plaintiffs have differing titles (and a larger class of nonexempt hourly workers will have additional, differing job titles), the putative class members are all hourly, nonexempt employees who provide healthcare to Baxter's patients, and are all subject to Baxter's 30-minute meal break and meal deduction policy. Ms. Amato's declaration that the "roles" of Burris and the consent plaintiffs represent less than 5% of the "hospital departments and off-site facilities" may be meaningful to Baxter but is not instructive to the undersigned.  (Doc. 47-1, Declaration of Natalie Amato, ¶ 3).  Differing roles or titles of hourly nonexempt class members is immaterial to the allegations alleged.  This case is about "how an otherwise acceptable policy was applied;" its application potentially denying employees hourly wages as well as overtime wages. *See Campbell v. Northwest Healthy & Rehab,*

7

*Inc.,* 2014 WL 584368, at *3 (E.D. Ark. Feb. 13, 2014); Doc. 43-1, pp. 15-18 (addressing "nonexempt (hourly) employees").

While Baxter alleges the numerosity of its clinics and facilities over two states, Baxter does not identify the actual number of clinics and facilities, saying only that Baxter has 120 "separate cost centers" which, the Court observers, is not the equivalent of 120 clinics and facilities. (Doc. 47-1, Declaration of Natalie Amato, ¶¶ 2-3). Burris replies that Baxter advertises only 28 locations with 25 of those within Baxter's Mountain Home, Arkansas medical center. (Doc. 48, pp. 3-4).

Baxter says that it has "2,000 full-time, part-time and PRN employees," but Ms. Amato does not say how many of those are hourly, nonexempt employees, and thus, the undersigned cannot make any quantitative judgment about the size of the employee class. (Doc. 47-1, ¶ 5).

Baxter argues operation of numerous clinics and facilities in two states weighs against certification; however, Baxter acknowledges its operations are in "north central Arkansas and south central Missouri" which can generally be described as within the same geographic location, and Burris does not seek certification beyond this region; these facts are favorable to conditional certification. (Doc. 47-1, ¶2).

According to Baxter's Employee Handbook, hourly employees across Baxter's operations were subjected to the same written policy and Burris, along with the four consent plaintiffs, say they were also subjected to the same unwritten policy, i.e., discouraged from canceling the meal deduction. It is alleged both that the 30-minute meal break policy was in place and the violations occurred during the statutory limitations period; Burris contends the nature of the violations (discouraging cancellation of the meal deduction) are substantially similar.

8

While no single supervisor or decision-maker is identified by Burris or the consent plaintiffs as responsible for this alleged practice by Baxter, this factor alone is not dispositive, particularly where the other factors weigh in favor of conditional certification. *Thornton, supra.*

The undersigned – precluded from reviewing the competing Declarations to sort out the truth of things – finds that Burris, having conducted very little discovery, has presented a sufficient basis to establish a "colorable basis" for conditional certification. *McAlister v. First Banks, Inc.,* 2014 WL 988448, at *2 (E.D. Mo. March 13, 2014) ("Conditional certification is appropriate … 'when the plaintiffs have established a colorable basis for their claim that a class of similarly situated plaintiffs exist.'") (internal citations removed); *Harris v. Chipotle Mexican Grill, Inc.,* 49 F. Supp. 3d 564, 576 (D. Minn. 2014) (a court may not engage in credibility determinations or otherwise weigh the evidence at this stage).

### III.  RECOMMENDATION

For these reasons, the undersigned recommends conditional certification of the following class:

> All hourly, non-exempt, patient care providers (a) who were employed by or on behalf of Baxter County Regional Hospital on or after January 24, 2020, and (b) who received an automatic meal period deduction during the past three (3) years ("Putative Class Members").

Should Judge Brooks adopt this Report and Recommendation, notice and the forms of notice will be approved at that time.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the District Court.**

**RECOMMENDED** this 12th day of April 2024.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE