IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANGEL BURRIS, Individually and on
Behalf of all Others Similarly Situated                                                          PLAINTIFF

V.                                   CASE NO. 3:23-CV-3008

BAXTER COUNTY REGIONAL HOSPITAL, INC.                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court is a Report and Recommendation ("R&R") (Doc. 50) by the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, submitted in this case on April 12, 2024, regarding a Motion for Conditional Certification (Doc. 42) filed by Plaintiff Angel Burris. The Magistrate Judge recommends granting Plaintiff's Motion for Conditional Certification. Defendant Baxter County Regional Hospital, Inc. filed objections to the R&R on April 26, 2024 (Doc. 51). Plaintiff filed a response to Defendant's objections on May 10, 2024 (Doc. 52). The Court has conducted a *de novo* review as to all proposed findings and recommendations that have drawn objection. *See* 28 U.S.C. § 636(b)(1). As explained below, the objections are **OVERRULED**, and the R&R is **ADOPTED IN FULL**.

### I. BACKGROUND

The background of Burris's case is well documented in the Magistrate Judge's R&R and is incorporated herein by reference. That being said, a short recitation of the important facts is provided below for context.

Plaintiff Angel Burris, alongside four other consent-plaintiffs, worked in different departments or "cost centers" of Defendant Baxter County Regional Hospital ("Baxter"), which services south-central Missouri and north-central Arkansas. Baxter has 120 "cost

1

centers" spread throughout 38 facilities, the vast majority of which are located in Baxter's medical center in Mountain Home, Arkansas. Burris and her consent-plaintiffs all worked in patient-facing positions, providing direct care.

According to Baxter's company policy, any employee who works at least six-and-one-half hours is expected to take at least a thirty-minute meal break. (Doc. 47-1, p. 3). And Baxter automatically deducts thirty minutes from employees' timecards to reflect this break—regardless of whether the employee actually took it. *Id*. However, for many patient-facing employees, taking an uninterrupted thirty-minute break is often infeasible because an uninterrupted break often results in an interruption in patient care. Instead, they must take piecemeal breaks to allow for continuous patient care, or simply go without a break. To remedy this, Baxter provides several methods for their employees to cancel their meal break deduction, either through their phones, department logbooks, or by reaching out to supervisors.

This automatic meal deduction policy is not violative of the Fair Labor Standards Act ("FLSA"), and Burris does not contend as such. *Hamilton v. Diversicare Leasing Corp.*, 2014 WL 4955799, at *3 (W.D. Ark. Oct. 1, 2014).Instead, Burris alleges that she and her coworkers were "lectured for cancelling [their] meal break[s]," and "deterred [ ] from cancelling [them]." (Doc. 43-2, p. 3). Burris and several coworkers were made to understand "that regular use of the cancellation would subject [them] to discipline." *Id.* Accordingly, they "followed Baxter Regional's direction and stopped using it each time [their] meal break[s] [were] missed or interrupted." *Id.* Burris contends that this "policy-to-violate-the-policy" constitutes the FLSA violation.

2

In recommending that this Court grant the Motion for Conditional Certification, Magistrate Judge Comstock advises the Court to conditionally certify the following collective:

> All hourly, non-exempt, patient care providers (a) who were employed by or on behalf of Baxter County Regional Hospital on or after January 24, 2020, and (b) who received an automatic meal period deduction during the past three (3) years ("Putative Class Members").

(Doc. 50, p. 9).

## II. LEGAL STANDARD

Section 216(b) of the FLSA authorizes collective actions for putative classes that are "similarly situated," but the statute offers no standard or threshold that courts should use in determining what "similarly situated" means. In the absence of clear guidance from the Eighth Circuit, district courts herein have generally relied upon the two-step certification process laid out by the Fifth Circuit in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Using this standard, courts undertake a progressively more rigorous analysis of whether the putative class is similarly situated. The process is described as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are

3

> similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

*Mooney*, 54 F.3d at 1213–14.

Within this two-step process, district courts in this Circuit have considered a variety of factors—no single one of which is dispositive—in determining whether the plaintiff and proposed collective members are similarly situated. These factors include: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether they were subjected to the same policies and practices, established in the same manner by the same decision-maker; (4) whether the alleged violations occurred during the same time period; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead Equip. Co., Inc.,* 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097-99 (11th Cir. 1996)).

Since this case is at the "notice stage," the Court need not make findings on legal issues or focus on whether there has been an actual violation of the law. *Godwin v. K-Mac Enterprises, Inc.,* 2020 WL 1044016, at *2 (W.D. Ark. Mar. 4, 2020). Similarly, the Court is not expected to make credibility determinations or resolve disputes over contradictory evidence in this initial stage. *Id.* Instead, the question before the Court is whether, according to Burris's pleadings and evidence provided, she has demonstrated she is similarly situated to the putative collective. *Id.*

### III. OBJECTIONS

Baxter asserts that the Magistrate Judge erred in recommending conditional certification of a class of patient-facing employees and asks this Court to deny Burris's

4

Motion, raising four objections. First, Baxter alleges that the amount of discovery that has been completed to date warrants a higher bar for conditional certification than a simple "modest factual showing." *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. Sep. 27, 2007). Second, Baxter argues that Burris and her consent-plaintiffs are not similarly situated due to their differing job titles and departments in which they work. Third, Baxter argues that the R&R failed to consider undisputed evidence. Fourth and finally, Baxter alleges that Burris has failed to identify with sufficient evidence the "unlawful companywide policy." *Id.* at pp. 9–10 (quoting *Saleen v. Waste Mgmt.*, 649 F. Supp. 2d 937, 940 (D. Minn. Sep. 1, 2009)).

### 1. Heightened Legal Standard

Baxter first objects to the standard that the Magistrate Judge applied in her recommendation to this Court. Magistrate Judge Comstock utilized the above-mentioned *Mooney* standard and made recommendations under the first step of the two-step inquiry. Baxter thinks this standard is inappropriate at this stage in the litigation, citing *Campbell v. Northwest Health & Rehab, Inc.* for the proposition that where discovery has been significantly completed, courts should "look harder than usual at the similarly situated question." 2014 WL 584368, at *3 (E.D. Ark. Feb. 13, 2014). But *Campbell* is inapposite to the facts at bar. In *Campbell*, over 14,000 pages of documents had been produced and depositions and interrogatories had been completed when the plaintiff moved for certification. *Id.* at *7. Here, fewer than 300 documents have been produced as of May 2024, the discovery deadline has not yet passed, and Burris intends to conduct more discovery before the deadline. *See* Doc. 52, p. 2. Taken together, these points weigh

against imposing a heightened legal standard at this first step of the inquiry. Accordingly, the first objection is **OVERRULED**.

### 2. Similarly Situated

Next, Baxter objects to the Magistrate Judge's recommendation that the Court find that Burris and the putative class are similarly situated. This argument was addressed at length in the R&R, and Baxter offers nothing new in its Objection. In Baxter's view, the fact that Burris and the consent-plaintiffs hold different job titles and work in different departments is evidence that they are not similarly situated. Baxter warns that if the Court conditionally certifies a class, it will be far too broad, encompassing employees who have no relation to the alleged unlawful policy.

The Court agrees with the Magistrate Judge's reasoning in the R&R and finds that Burris and consent-plaintiffs are similarly situated. Burris and several consent-plaintiffs allege that they were subjected to a policy that discouraged them from using meal break deductions and that this unwritten policy was conveyed to them during meetings with managers. Though Burris and consent-plaintiffs indeed had differing job titles and worked in different departments, they were all hourly, non-exempt, patient-facing employees. Regardless of their specific titles, Burris and all consent-plaintiffs allege that they were expected to forego or shorten their breaks to provide care to patients—all could be expected to provide medical assistance and aid to any patients in their workspace during any break on their shifts. They are similarly situated, and as such Baxter's second objection is **OVERRULED**.

### 3. Consideration of Evidence

Baxter's third objection is that the R&R improperly "overlooks facts not disputed by Burris" that are favorable to Baxter, including: (1) employees receive a thirty-minute unpaid meal period; (2) employees are free to leave facilities during their breaks; and (3) employees can cancel the meal deduction either through their phones, employee logbooks, or by speaking to their supervisors. (Doc. 51, p. 7). Baxter is incorrect, however, in assuming all of these points are undisputed. Burris and several of the consent-plaintiffs assert that they were not provided full thirty-minute breaks, often having to cut them short in order to provide care to patients, or simply not taking them at all. *See, e.g.*, Doc. 43-2, pp. 2–3. Burris also alleges that she and her coworkers often were unable to leave work during their breaks for similar reasons to those mentioned above. *Id.* Finally, Baxter's claims about methods of cancelling the meal deduction are immaterial to the case at bar. Burris alleges that she and consent-plaintiffs were "lectured for cancelling [their] meal break[s]," not that the methods of cancelling were insufficient. *Id.* These facts are indeed disputed or irrelevant to the issue, and it would be improper for the Court to make a credibility determination or a finding of fact at this time. *See Godwin*, 2020 WL 1044016, at *2 (citing *Grayson*, 79 F.3d at 1099 n.17). The third objection is **OVERRULED**.

### 4. Insufficient Evidence

Lastly, Baxter argues that the Court should refuse to infer the existence of an unlawful companywide policy from the facts alleged here. Baxter contends that Burris failed to properly substantiate this policy's existence and likens this case to *Saleen v. Waste Mgmt., Inc.* 649 F. Supp. 2d 937, 940–41 (D. Minn. Sep. 1, 2009). In *Saleen*, the plaintiff alleged a similar unwritten policy under which supervisors prevented employees

from taking full thirty-minute lunch breaks and then deterred them from cancelling their meal deductions. The court concluded that purely circumstantial evidence in the form of numerous declarations was insufficient to prove the existence of a companywide policy to deprive employees of their breaks, and a class should only be certified for notice purposes when "the percentage of employees who complain of being improperly compensated grows large enough to establish a 'colorable basis' to infer that they were victimized by a companywide policy." *Id.* at 941. In the end, the *Saleen* court denied conditional certification, finding that the consent-plaintiffs' "112 declarations represent[ing] fewer than 1% of the 20,000 to 30,000 potential class members" was simply not enough to infer a companywide policy. *Id.* at 942.

Although percentages of interested opt-ins (and the proportionalities they reflect) have sometimes been viewed as an additional helpful factor in the similarly-situated analysis, the Eighth Circuit has never required a threshold percentage of opt-ins to justify conditional certification. *See Chin v. Tile Shop, LLC,* 557 F. Supp. 3d 1075, 1091 (D. Minn. Oct. 27, 2014). Rather, a plaintiff must only make a "modest factual showing" to establish that she and the putative class members were subjected to a common "decision, policy, or plan." *Cupp v. MHM Health Professionals, LLC*, 2024 WL 549974, at *2 (E.D. Mo. Feb. 12, 2024) (citing *Kautsch v. Premier Comm.*, 504 F. Supp. 2d 685, 690 (W.D. Mo. Jan. 23, 2007)); *Getchman v. Pyramid Consulting, Inc.* 2017 WL 713034, at *4 (E.D. Mo. Feb. 23, 2017). Indeed, multiple district courts in this circuit faced with facts similar to the ones at bar have granted conditional certification. *See, e.g., Brashear v. SSM Health Care Corp.,* 2023 WL 4247601, at *2 (E.D. Mo. June 29, 2023); *Hussein v. Capital Bldg. Services Group, Inc.,* 152 F. Supp. 3d 1182, 1192 (D. Minn. 2015); *Peck v. Mercy Health,*

8

2022 WL 17961184, at *3 (E.D. Mo. Dec. 27, 2022). For all these reasons, Baxter's final objection is **OVERRULED**.

## IV. NOTICE AND FORM OF CONSENT

Having conditionally certified the collective, the Court must now approve the notice to be sent to potential opt-in plaintiffs. The Court "ha[s] the discretion to manage the issuance of notice because the benefits derived from collective action dispute resolution 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Coates v. Dassault Falcon Jet Corp.*, 2017 WL 5598219, at *4 (E.D. Ark. Nov. 21, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Burris seeks a sixty-day opt-in period and to send notice by mail, email, and text message. Burris also seeks to send a reminder notice to the potential collective members. Baxter asks the Court to approve mail-only notice, and no reminder notice. Baxter also asks to be given fourteen days to provide employee information, as opposed to Burris's requested ten days.

Consistent with past practices, the Court finds that a sixty-day notice period, a reminder notice, and notice by email, mail, and text are warranted. *See Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436 (D.N.M. 2018) (permitting text notice); *see also Lijun Geng v. Shu Han Ju Rest. II Corp.*, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019). The reminder notice may be sent to the collective thirty days following the initial notice via text, email, and U.S. mail. Plaintiff's proposed notice and consent documents are also approved. Baxter is to provide Burris with the contact information for the collective members no later than fourteen days from the date of this Order.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that all objections are **OVERRULED**, and the Magistrate Judge's R&R (Doc. 50) is **ADOPTED IN FULL.** Plaintiff's Motion for Conditional Certification and for Judicial Notice to Class (Doc. 42) is **GRANTED** as follows:

1. The collective action is conditionally certified as:
   All hourly, non-exempt, patient care providers (a) who were employed by or on behalf of Baxter County Regional Hospital on or after January 24, 2020, and (b) who received an automatic meal period deduction during the past three (3) years ("Putative Class Members").

2. The Notice and Consent Forms attached to the Motion (Doc. 43-7) are **APPROVED**.

3. Defendant is **ORDERED** to provide Plaintiff's counsel with contact information for the conditionally certified collective no later than fourteen days from the date of this Order. The contact information should be in Excel (.xlsx) format and include each employee's full name; last known addresses with city, state, and zip code; last known e-mail addresses (non-company addresses if applicable); last known phone numbers; beginning dates of employment; and ending dates of employment (if applicable).

4. Plaintiff's counsel is directed to send notice to the potential collective members by mail, email, and text within ten days of receiving contact information from Baxter. The notice period will end sixty days after initial notice is sent, and a reminder notice may be sent thirty days after the initial notice.

**IT IS SO ORDERED** on this __18th__ day of July, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE