**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**ANGEL BURRIS**, **Individually and on**
**Behalf of all Others Similarly Situated**                                    **PLAINTIFF**

**V.**                                              **CASE NO. 3:23-CV-3008**

**BAXTER COUNTY REGIONAL HOSPITAL, INC.**                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

**TABLE OF CONTENTS**

**I.  BACKGROUND** ................................................................................. 2

**II.  COLLECTIVE ACTION DECERTIFICATION** ............................................. 4

   **A.  Factual and Employment Setting** ...................................................... 6

   **B.  Individual Defenses Available to Defendant** ....................................... 8

   **C.  Fairness and Procedural Considerations** ........................................... 9

**III.  SUMMARY JUDGMENT** ..................................................................... 11

   **A.  Legal Standard** ........................................................................... 11

   **B. Table A: Time-Barred Plaintiffs** ...................................................... 13

   **C.  Table B: Little or No Overtime** ....................................................... 13

   **D.  Table C: Late-Filed Consents** ........................................................ 14

   **E.  Burris's Claims** .......................................................................... 16

      *1.  Performance of Uncompensated Work* ........................................ 16

      *2.  Amount and Extent of Work* ..................................................... 17

      *3.  Reasonable Reporting Procedure* ............................................... 18

      *4. De Minimis Doctrine* ............................................................... 21

   **F.  Statute of Limitations** ................................................................... 21

**IV. CONCLUSION** ................................................................................. 23

Now before the Court are Defendant Baxter County Regional Hospital's Motion to Decertify the Conditional Collective Action (Doc. 75) and Motion for Summary Judgment (Doc. 77). The Court previously conditionally certified a collective action under the FLSA. (Doc. 54). The notice period is now closed, and Baxter County Regional Hospital ("Baxter") moves to decertify. Baxter also moves for summary judgment against Angel Burris as class representative, and against particular opt-in plaintiffs who have joined the collective action. Both Motions have been fully briefed by the parties and are ripe for decision. For the reasons below, both motions are **DENIED**.

## I.  BACKGROUND

Plaintiff Angel Burris brought this action on behalf of herself and other hourly, non-exempt, patient care providers employed by Baxter, challenging Baxter's automatic meal deduction policy, which she claims violates the Fair Labor Standards Act ("FLSA"). The FLSA requires employers to pay overtime to non-exempt employees at a rate not less than one and one-half times an employee's regular rate for all hours worked more than 40 hours in a week. 29 U.S.C. § 207(a)(1). Baxter does not dispute that Plaintiffs are non-exempt.

According to Baxter's company policy, any employee who works at least six and one-half hours is expected to take at least a thirty-minute meal break. (Doc. 47-1, p. 3). And Baxter automatically deducts thirty minutes from employees' timecards to reflect this break—regardless of whether the employee actually took it. *Id*. However, Burris and other opt-in Plaintiffs testified in their depositions that their patient-care obligations often prevented them from taking a thirty-minute break. *See* Doc. 75-2, 33:10–35:8 (Burris Depo.); Doc. 82-2, 29:21–30:11 (Pullen Depo.); Doc. 75-7, 17:1–4 (Helm Depo.). To

address this fact, Baxter's policy "requir[es] those employees to cancel the meal break deduction if their meal breaks were interrupted." (Doc. 76, p. 19). Baxter provides several methods for their employees to cancel their meal break deduction, and Plaintiffs used those methods to cancel the deduction with varying frequency during their employment.

In addition to its routine cancellation methods, Baxter had a system in place to correct erroneous non-cancellations that came to the Human Resource Department's attention. Baxter employs approximately 2,000 hourly patient-care providers subject to the lunch deduction. (Doc. 47-1, ¶ 5). Its HR employee, Natalie Amato, says HR corrected erroneous non-cancellations seven times in the five-year period of 2019 through 2023. (Doc. 77-2, ¶ 2). But Baxter admits it violates its own written policy through its cancellation procedure. While its handbook states that "[i]f an employee does not receive a 30-minute uninterrupted meal period, the employee must cancel the [full] meal period," (Doc. 82-6), when correcting erroneous non-cancellation, Baxter only "ask[s] the employee to determine the amount of time worked that was uncompensated," and "pay[s] them for that time." (Doc. 77-2, ¶ 2).

This automatic meal deduction policy is not itself violative of the FLSA, and Burris does not contend as such. *See* Doc. 54, p. 2. Instead, Burris alleges that Baxter had an unwritten policy of "discouraging its patient care providers from seeking compensation for meal breaks that were interrupted." (Doc. 82, p. 2). To enforce this policy, Burris alleges Baxter explicitly or implicitly indicated that employees should not cancel the deduction if

they got some break[1] and chastised employees if deductions were canceled too frequently.[2]

In July 2024, the Court conditionally certified the following collective action:

All hourly, non-exempt, patient care providers (a) who were employed by or on behalf of Baxter County Regional Hospital on or after January 24, 2020, and (b) who received an automatic meal period deduction during the past three (3) years ("Putative Class Members").

(Doc. 54, p. 10). Over a hundred Baxter employees have opted in to the conditionally certified collective action. At the conditional certification stage, Baxter pressed some of the same arguments as it does now: Burris is not similarly situated to other Plaintiffs because they work in different departments and have different job duties, and she has failed to produce sufficient evidence of an unlawful policy. The Court rejected them then, and Baxter reurges them now, under the heightened evidentiary standards at step two of certification and summary judgment.

## II. COLLECTIVE ACTION DECERTIFICATION

Baxter has moved to decertify, arguing that Burris cannot establish that she and the opt-in Plaintiffs are similarly situated. Burris responds that there is evidence of a

---

[1] Doc. 75-7, 23:25–24:3 (Helm) ("[F]irst I would try to cancel it, because I would be like I didn't get my full break. But we got to the point that if we got any break, it was considered a break."); Doc. 75-8, 32:24–25 (Bryant) ("[S]ometimes we were told if it was just a few minutes then it wasn't a missed meal."); Doc. 82-3, 45:22–24 (Nash) ("It is the implication that if you were able to eat food, you got a lunch.").

[2] Doc. 82-4, 20:2–7 (Cole Depo.) ("[A] lot of times we would hear it after our manager has gone to a meeting, and then she would come back and say . . . I noticed that y'all have been, you know, saying no lunches a lot. And we need to not be doing that."); Doc. 75-2, 26:3–6 (Burris) ("[I]f there was kind of an uptick in people hitting the button for a break, seems like we would end up with another staff meeting about it."); Doc. 82-3, 46:8–13 (Nash) ("[I]f there are too many instances of clocking out no lunch, then at a staff meeting or in a huddle it is addressed that we need to make sure we're getting a lunch break, but then there is no follow up with how we are supposed to do that.").

uniform FLSA-violating policy, plaintiffs are similarly situated with respect to that policy, and any differences in employment setting can be accounted for after liability is determined.

The FLSA gives an employee the right to sue his employer "for and in behalf of himself . . . and any other employees similarly situated." 29 U.S.C. § 216(b). Thus, the central question in determining if this collective action can proceed as such is whether Baxter's hourly, non-exempt, patient care providers are "similarly situated." The FLSA does not define "similarly situated," but precedent offers some guidance. "In applying the FLSA, [the Court] must liberally construe it to apply to the furthest reaches consistent with congressional direction in fulfillment of its humanitarian and remedial purposes." *Perez v. Contingent Care, LLC*, 820 F.3d 288, 292 (8th Cir. 2016) (internal quotations omitted) (quoting *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975)). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd and remanded*, 577 U.S. 442 (2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

In deciding whether collective action is appropriate, the Eighth Circuit directs courts to consider such factors as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (alteration in original) (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

## A. Factual and Employment Setting

Having reviewed the voluminous record in this matter, the Court finds that the factual and employment settings of the opt-in plaintiffs are substantially similar with respect to the policy underlying their claim. Plaintiffs have provided significant evidence to support their claim that they worked without pay because of Baxter's "policy-to-violate-the-policy." Of the six Plaintiffs who were deposed, all six testified that they felt or were told that *some* break, even if it was less than thirty minutes, counted as a meal break,[3] and five out of six testified that they were verbally chastised in some manner for canceling the deduction too frequently.[4] The sixth Plaintiff who didn't testify to being verbally

_____

[3] *See* Doc. 75-8, 32:21–25 (Bryant) ("[S]ometimes were were told that if it was just a few minutes then it wasn't a missed meal."); Doc. 75-2, 16:11–13 (Burris) ("Meal break is you get to go to the bathroom, you get to eat something."); Doc. 82-4, 20:21–25 (Cole) ("[Y]ou had a feeling that you—that it was frowned upon to do it [cancel the deduction] very often . . . unless you missed an entire lunch break."); Doc. 75-7, 37:7–14 (Helm) (Q: [T]hat charge nurse would say, did you get any break. And if you said yes, the charge nurse would say, well, you got your break and not report it. Did I hear that correctly? A: Yes . . . And sometimes the supervisor would say that as well if we went directly to her.); Doc. 82-3, 45:22–24 (Nash) ("It is the implication that if you are able to eat food, you got a lunch."); Doc. 75-4, 57:15–19 (Pullen) ("[I]f you have 5, 10, 15 minutes, you know, sometimes well, you call that good enough for a lunch, because you know some of the other nurses may have not even had a lunch.").

[4] *See* Doc. 75-8, 33:12–18 (Bryant) (Q: Did you ever get disciplined for, you know, writing in the logbook when that you missed a meal? A: Yes. At times. . . . Just, they was just sometimes told us that if we—if we didn't miss more than a few minutes then we shouldn't be writing it in the book.); Doc. 75-2, 22:16–23 (Burris) (Q: Did you ever get any direct pushback from an individual about canceling a meal deduction? . . . A: Not one-on-one. We had discussion about how it is against policy, you could get in trouble for violating policy during staff meetings.); Doc. 82-4, 48:22–25 (Cole) ("[A]fter our supervisor would go to a manager's meeting, and she was told during the meeting that, you know, they need to have us not be using so much no lunch, you know, deductions."); Doc. 75-7, 17:10–19 (Helm) (Q: [D]id you ever get written up or disciplined for canceling the meal break deduction? . . . A: No, I did not. . . . They were only verbal warnings and verbalizations of hey, let's not do that.); Doc. 82-3, 46:8–13 (Nash) ("[I]f there are too many instances of clocking out no lunch, then at a staff meeting or in a huddle it is addressed that we need

chastised did, however, "speculate" that her supervisor didn't like her because of how often she canceled the deduction. *See* Doc. 75-4, 54:7–22 (Pullen).

Baxter argues that Plaintiffs are not similarly situated because they had different supervisors and worked in different departments, so Plaintiffs' testimony cannot show a uniform policy. However, the evidence is entirely consistent with a uniform policy. A reasonable jury could infer from Plaintiffs' evidence that Plaintiffs experienced the same treatment across departments *because* there was such a policy. Therefore, the Court finds that proof of conduct in conformity with the alleged unlawful policy as to one plaintiff helps prove the existence of the alleged unlawful policy as to all plaintiffs, which, under *Bouaphakeo*, supports collective action certification. 765 F.3d at 796; *see also Monroe v. FTS USA, LLC*, 860 F.3d 389, 403–04 (6th Cir. 2017) ("FTS Technicians' claims are unified by common theories: that FTS executives implemented a single, company-wide time-shaving policy to force all technicians—either through direct orders or pressure and regardless of location or supervisor—to underreport overtime hours worked on their timesheets."); *Adams v. City of Kansas City*, 2021 WL 1206620, at *4 (E.D. Mo. Mar. 30, 2021) ("The same evidence will be utilized to prove or disprove the policy, the policy's application to the collective action members, and the City's actions in carrying out the policy. Accordingly, the same evidence will be used to prove or disprove the collective action members' FLSA claim against the City.").

Baxter also points to its written policy requiring employees to cancel the deduction if their lunch was interrupted, and the methods it made available to do so. An employer

---

to make sure we're getting a lunch break, but then there is no follow up with how we are supposed to do that.").

cannot paper over an unlawful practice with a contradictory written policy. *McClean v. Health Sys., Inc.*, 2011 WL 6153091, at *6 (W.D. Mo. Dec. 12, 2011) ("Defendants['] maintenance of a formal policy compensating employees for all hours worked during meal breaks is not sufficient to defeat Plaintiffs['] FLSA claim if Defendants have a common practice of requiring employees to work during lunch breaks without compensation."). And as the Court said with respect to conditional certification, the "methods of cancelling the meal deduction are immaterial." (Doc. 54, p. 7). Plaintiffs allege that they were discouraged from cancelling the deduction, "not that the methods of cancelling were insufficient." *Id.* And plaintiffs' argument is buttressed, not undermined, by the fact that HR only issued seven corrections in a five-year period across approximately 2,000 employees, a number that seems surprisingly low in light of the frequency with which Plaintiffs claim their meals were interrupted.

### B. Individual Defenses Available to Defendant

Baxter also argues that the availability of individualized defenses means Plaintiffs are not similarly situated. Baxter is not explicit about which individualized defenses are available to it or what evidence it has to support those defenses, instead gesturing vaguely at cases decertifying based on questions such as whether individuals actually worked uncompensated overtime, in which weeks, whether such work was *de minimis*, and whether their supervisors knew about it. All these questions go to damages, and "defenses pertaining to issues of damages do not preclude collective adjudication." *Adams*, 2021 WL 1206620, at *4 (collecting cases). Some of these individualized defenses involve nothing more than checking administrative records and performing arithmetic to determine who worked overtime when—arithmetic Baxter appears to have

already largely performed. *See* Doc. 78, pp. 10–11 (identifying opt-in plaintiffs that had no overtime or less than 338.5 total hours within the limitations period); *Browne v. P.A.M. Transp., Inc.*, 2019 WL 333569, at *3 (W.D. Ark. Jan. 25, 2019).

Moreover, these defenses can be adequately raised at trial with representative testimony and by bifurcating liability and damages. *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 540 (S.D. Tex. 2008) (collecting cases permitting representative testimony); Fed. R. Civ. P. 42(b) (conferring broad discretion on district courts to bifurcate issues). While this factor may weigh against collective action, it does not weigh heavily. Such nebulous defenses—which would be equally burdensome for Baxter to prove if all Plaintiffs litigated individually—do not justify depriving Plaintiffs of their right to proceed collectively.

## C. Fairness and Procedural Considerations

"The FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" *Kelley v. Alamo*, 964 F.2d 747, 749–50 (8th Cir. 1992) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)). Collective action under § 216(b) gives FLSA plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact . . . ." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Here, the central issue—whether Baxter had a policy of discouraging employees from accurately reporting time worked during automatically-deducted meal breaks—can be efficiently adjudicated on a collective basis.

Baxter, however, argues that the third factor favors decertification because representative testimony is not sufficient to determine liability under the fact-intensive "predominant benefit" test, *see infra* section III.E.1, and a collective trial will therefore be unmanageable and confusing. This argument fails on two counts. First, the Court is not convinced that representative testimony is infeasible here. While the type and scope of interruption may vary between departments, there is no reason that every opt-in plaintiff needs to testify about meal break interruptions when many of them are likely to work in the same departments. *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."). Second, these differences do not contravene Plaintiffs' asserted uniform policy. Factual differences surrounding the work undertaken during meal breaks do not hinder efficient collective determination of the central issue, whether Baxter in fact had an unlawful policy. And the Court notes that other collective actions have successfully proceeded to trial where the predominant-benefit issue was in dispute. *See Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 872, 880–81 (8th Cir. 2012).

The bottom line is Baxter has not identified any persuasive reason why individual lawsuits would be a superior method of resolving Plaintiffs' claims. If the Court decertified the collective actions and the opt-in Plaintiffs chose to pursue their claims individually, the resulting hundred-plus individual trials about Baxter's meal deduction policy would plainly waste more time and judicial resources that it would preserve. Instead, as Congress well knew in enacting § 216(b), plaintiffs forced into individual litigation "can hardly be expected to pursue these small claims individually, so there is little likelihood that their

rights will be vindicated in the absence of a collective action." *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002).

Plaintiffs have presented proof that they suffered from a single FLSA-violating policy, so they are similarly situated within the meaning of the FLSA. Defendant's Motion to Decertify (Doc. 75) is **DENIED**. Plaintiffs will be permitted to collectively litigate the issues of Baxter's liability and willfulness, *see infra* section III.F. If they succeed in establishing liability, Baxter may renew its motion to decertify before trial on damages.

### III. SUMMARY JUDGMENT

Baxter moves for summary judgment on Burris's individual claim, arguing that Burris has failed to establish that she performed any overtime work, and even if she did work without compensation, Baxter did not have sufficient knowledge. Baxter also challenges fifty-seven opt-in plaintiffs based on the statute of limitations, the amount of overtime worked, and some late-filed consents to join. The Court addresses the challenged opt-in plaintiffs before turning to the merits of Burris's claim.

### A. Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Nat'l Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999) (quoting Fed. R. Civ. P. 56). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party bears the burden of proving the absence of any material factual disputes and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

To prevail on an overtime claim for unpaid mealtime work, a plaintiff must show: "(1) that the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been properly paid." *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 783 (8th Cir. 2009). "When an employer maintains accurate time records, as required under the FLSA, employees can satisfy their evidentiary burden by securing those accurate time records." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). "If an employer has failed to keep records, employees are not denied recovery under the FLSA simply because they cannot prove the precise extent of their uncompensated work." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014). Instead, once employees show they performed work that was not compensated, they are subject to a relaxed evidentiary standard for damages. If the employees present "'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to

dispute the reasonableness of the inference." *Carmody*, 713 F.3d at 406 (quoting *Mt. Clemens*, 328 U.S. at 687–88).

### B. Table A: Time-Barred Plaintiffs

Baxter challenges twenty-one opt-in Plaintiffs who filed their consents more than three years after their employment at Baxter ended. Burris concedes that those Plaintiffs should be dismissed and filed a notice of withdrawal regarding most, if not all, of them. (Doc. 97). To the extent that any Table A plaintiffs have not been withdrawn, they are **DISMISSED**.

### C. Table B: Little or No Overtime

Baxter also challenges twenty-seven opt-in plaintiffs who, Baxter asserts, worked little or no overtime within the limitations period. Many of these plaintiffs have since been withdrawn. (Doc. 97). Of those that remain, Burris argues some should not be dismissed because Baxter admits, or payroll records show, they worked overtime in the limitations period. Burris also argues that Amato's declaration, where Table B originated, is not adequately supported with respect to some of the plaintiffs.

For the plaintiffs who Baxter admits worked overtime within the statute of limitations period, Baxter argues they should nonetheless be excluded because of the withdrawal of one of the original consent plaintiffs, Carilla Zirkle, who withdrew because she had "very limited time in the SOL." (Doc. 77-1). Zirkle's decision to withdraw is no reason to exclude Plaintiffs who worked overtime during the limitations period. Burris has also correctly identified a few employees who Baxter marked as having no overtime that payroll records show did, in fact, work overtime. *See* Docs. 85, p. 18; 85-4; 85-5; 85-6. Baxter does not

contest this. *See* Doc. 89. The Court will not dismiss Plaintiffs who worked overtime in the limitations period.

Burris raises an evidentiary objection to dismissing the remaining plaintiffs in Table B. Table B appears in Baxter HR employee Natalie Amato's declaration, which she states "rel[ies] upon business records created and maintained in the ordinary course of business by Baxter." (Doc. 77-2, ¶¶ 1, 6). Burris argues that this is improper summary evidence because Baxter has not identified the records underlying these Plaintiffs' inclusion on Table B or made them available to her as required by Federal Rule of Evidence 1006. (Doc. 85, pp. 1–2, 19). In it Reply, Baxter does not deny that it failed to make these records available, so the Court will not dismiss these Plaintiffs at this juncture.

In summary:

- Margaret Anderson, Kelly Broad, Leslie Collins, Kierstyn Files, Robert Foss, Emily Green, Denise McBride, Beth McGee, Nathan Neumann, Heather Prichard, Kelly Reasons, and Tammy Wood have been withdrawn.

- The Court will not dismiss Gwendolyn Broderick, Taylor Cotton, Kasandra Kisor, Kim May, Tina Miller, Deborah Overcast, Sonja Tesch, or Dawn Wyble, who Baxter concedes worked overtime during the limitations period.

- The Court will not dismiss Bailey Devaul, Joshua Hahaj, or Jill Tachen because Burris has presented evidence that they worked overtime during the limitations period.

- The Court will not dismiss Jade Broussard, Stacy Duke, Dawn Smith, or Raylea Pierce based on Amato's unsupported declaration.

## D. Table C: Late-Filed Consents

Finally, Baxter argues that the nine Plaintiffs who filed consents to join the collective action after the notice period ended should be dismissed without prejudice. Baxter also asserts that several of these Plaintiffs did not work overtime within the limitations period. Two of the nine withdrew their consent after summary judgment briefing was complete, and Burris concedes that two others did not work for Baxter within the

limitations period. (Doc. 97; Doc. 85, p. 20–21). The FLSA is a remedial statute, so "[a] generous reading, in favor of those whom congress intended to benefit from the law, is . . . appropriate when considering issues of time limits and deadlines." *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir. 1992). "In determining whether to accept consent forms filed after a court-imposed deadline, courts generally consider: '(1) whether "good cause" exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) remedial purposes of the FLSA.'" *Albelo v. Epic Landscape Prods., L.C.*, 2019 WL 13280214, at *1 (W.D. Mo. July 31, 2019) (quoting *Davenport v. Charter Commc'n, LLC*, 2015 WL 13691884, at *1 (E.D. Mo. Feb. 10, 2015)).

Of the remaining Plaintiffs in Table C, three mailed their consent forms to Burris's counsel on or before the October 11 deadline. (Doc. 85-2). The other two mailed their consent forms four and eight days after the deadline, respectively. (Doc. 85-3). While Burris has not shown good cause for their tardiness, Baxter has not asserted that it would be prejudiced by their inclusion and including them promotes efficient resolution of their claims and comports with the spirit of the FLSA.

As to Baxter's assertions regarding which of the Table C plaintiffs did not work overtime within the limitations period, Burris objects to the Amato declaration as described *supra* section III.C. For the same reasons, the Court will not dismiss these Plaintiffs at this juncture.

In summary:

- Yony Zuniga Elena and Julie Tweedy have been withdrawn. (Doc. 97).
- Burris concedes that Patricia Brindley and Rita McKinney did not work for Baxter within the limitations period, so they are **DISMISSED**. (Doc. 85, pp. 20–21).

15

- The Court accepts the remaining Table C Plaintiffs' late-filed consent, Megan Arender, Lacie Bettencourt, Donald Gillihan, Sherry Robertson, and Sherry Smith.
- The Court will not dismiss Lacie Bettencourt and Sherry Smith based on Amato's unsupported declaration.

### E.  Burris's Claims

Baxter argues both that Burris cannot prove she performed any uncompensated overtime work and that she has not produced sufficient evidence to allow a jury to reasonably infer the amount and extent of any uncompensated work she did perform. Baxter also asserts that Burris's recovery is barred because of her failure to comply with Baxter's reasonable reporting procedures. The Court finds that viewing the record in the light most favorable to Burris and crediting her and the other Plaintiffs' deposition testimony, a reasonable jury could reach a verdict in her favor.

### 1.  Performance of Uncompensated Work

While Baxter states that "[b]ased on the evidence in this case, no rational jury could conclude that Burris performed overtime for which Baxter failed to pay," it does not direct the Court to any evidence that controverts Burris and the other Plaintiffs' testimony that they worked during meal breaks even when those meal breaks were deducted from their paychecks. *See* Doc. 78, p. 15. Baxter asserts, correctly, that the predominant-benefit standard applies to Burris's claims. Under that standard, courts ask "whether employees were spending certain period of time predominantly for the benefit of the employer or for their own benefit." *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 533 (8th Cir. 1993). Thus, employers need not "compensate employees for all meal periods in which the employee is relieved of all duties except simply remaining on-call to respond to emergencies." *Id.* at 534.

16

However, Baxter does not, and surely cannot, point to any authority relieving it of the obligation to compensate on-call employees for work actually performed after being called. *See id.* at 537 (finding a genuine issue of material fact existed when there was a dispute over whether on-call employees were "allowed to complete meal periods interrupted by an emergency"). A reasonable jury could credit Burris's testimony, which is corroborated by the testimony of the five other Plaintiffs who were deposed, and conclude that Burris did in fact work during her unpaid meal breaks.

### 2. *Amount and Extent of Work*

Baxter's argument instead focuses on Burris's proof regarding the amount of uncompensated work she performed during her unpaid meal breaks. An employer who fails to maintain accurate time records as required by the FLSA "will not be permitted to benefit from his failure." *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997). When employers fail to keep accurate time records, plaintiffs are therefore permitted to "approximate" the amount of uncompensated work; they are not required to prove its "precise extent." *Perez v. Contingent Care, LLC*, 820 F.3d 288, 293 (8th Cir. 2016) (quoting *Mt. Clemens*, 328 U.S. at 687–88). But that is exactly what Baxter's argument demands.

Burris does not dispute the accuracy of Baxter's payroll records other than the lunch deduction. And she has offered a meaningful explanation for how to estimate her total uncompensated overtime, by applying her testimony regarding the frequency of interrupted lunches[5] to Baxter's weekly payroll records that show hours worked and the

---

[5] Doc. 75-2 (Burris), 33:16–20 (Q: [C]ould you put a percentage on, you know, what portion of your meal breaks were actually the full 30-minute meal break? A: I would say percent wise, 10 to 20 percent. Most often than not, I did not get a full 30 minute.).

number of meal deductions. None of the cases Baxter cites in support of its argument are remotely analogous.

Although Burris's damages argument is, by its nature, already limited to thirty minutes per shift worked, on shifts where she did not cancel the deduction, and in weeks where she was eligible for overtime, Baxter demands greater precision, implying that Burris should have pointed to "specific meal break[s]" and presented "documentary evidence as to specific weeks that she worked through meal breaks for which she was not compensated." (Doc. 78, p.17). The Supreme Court rejected this argument in *Mt. Clemens*; "it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment." 328 U.S. at 687. "There is no requirement that [employees] keep records of their hours to prove the precise extent of uncompensated work." *Salmon v. XTO Energy, Inc.*, 2022 WL 20822556, at *2 (E.D. Ark. Mar. 28, 2022) (citing *Mt. Clemens*, 328 U.S. at 687). The Court will not erect "an impossible hurdle" to prevent Burris from presenting her well-supported claims to a jury. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (quoting *Mt. Clemens*, 328 U.S. at 687). Burris has presented sufficient evidence to establish the amount of uncompensated work she performed for Baxter as a matter of just and reasonable inference.

### 3. *Reasonable Reporting Procedure*

Finally, Baxter argues that even if Burris has sufficiently proved her damages, it is nonetheless "not liable for non-payment if the employee fails to follow the established process." *See* Doc. 78, p. 18 (citing *Travis v. Banks*, 2022 WL 1397717, at *6 (W.D. Ark. May 3, 2022)). Baxter, however, conveniently ignores the very next sentence in that case:

"[C]ourts have found that an employer's formal policy for reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting of overtime in practice." *Id.* (quoting *Grounds v. City of Little Rock*, 2022 WL 468011, at *2 (E.D. Ark. Feb. 15, 2022)). Baxter also ignores Burris's testimony and the testimony of the other opt-in Plaintiffs that corroborate it, arguing that "Burris has presented no evidence that Baxter violated its own meal deduction policy." (Doc. 78, p. 19).

In its Reply, Baxter changes course, arguing that the testimony of other Plaintiffs does not support Burris's testimony because the other Plaintiffs worked in different departments. (Doc. 89, ¶¶ 7–8). As the Court stated above, employees in different departments testifying to the same treatment—pressure not to accurately report work during meals—is consistent with the uniform policy that Burris alleges.

Baxter also asserts that it lacked knowledge of Burris's inaccurate timekeeping because charge nurses who saw Burris working during her meal break did not have access to other employees' time sheets and therefore could not know if she was canceling the deduction. This contention, like Baxter's others, ignores Burris's central argument— that the charge nurses, operating pursuant to Baxter's policy, discouraged employees from canceling the meal deduction. In fact, the charge nurse who Baxter claims could not have known that Burris was not accurately cancelling the meal deduction is the same nurse who, Burris alleges, was pressuring her not to record the missed meals.

While charge nurses may not have been able to check whether the pressure campaign was working, that does not mean such a campaign did not exist. And contrary to Baxter's assertions, the record contains testimony from Burris's own supervisor that charge nurses had supervisory responsibilities directly related to meal breaks and

overtime. *See* Doc. 82-1, 12:9–12 (O'Dell Depo.) (Q: [T]he charge nurses at the 3 West Unit are also tasked to ensure that all staff take their meal breaks? A: Yes.), 13:19–20 (Q: Do they have to get that [overtime] pre-approved? A: So it can be approved through the charge nurse . . . . Q: But it does have to be approved, correct? A: Yes.). The pervasive effect of these charge nurse instructions, even when the instruction was framed as "you must take a break" rather than "you must not cancel the deduction," was that employees were limited in the number of meal deductions they could cancel irrespective of if they actually worked during their meal break. *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973).

Baxter suggests, in passing, that Burris and other Plaintiffs' testimony about their treatment at Baxter is inadmissible:

> And Burris cannot avoid summary judgment with statements from employees relaying what they heard from other unknown employees. [*Su v. Levering Reg'l Health Care Ctr., L.L.C.*, 2023 WL 6795405, at *12 (E.D. Mo. Oct. 13, 2023)] ("Plaintiff's burden to meet proof with proof is greater than simply relying on statements from employees as to what they heard from other unknown employees."); *see also Jesinoski v. Countrywide Home Loans, Inc.*, 883 F.3d 1010, 1014 (8th Cir. 2018) (a "party may not defeat summary judgment with evidence that will be inadmissible at trial").

(Doc. 89, ¶ 8). But Burris and the other Plaintiffs didn't merely "relay[ ] what they heard from other unknown employees," *see* Doc. 89, ¶ 8, they testified to statements made by their identified charge nurses or supervisors instructing them in their employment. These statements are plainly definitional nonhearsay, whether they are offered for a purpose other than their truth, *e.g.*, effect on the hearer, or  for their truth as opposing party's statements. *United States v. Brown*, 122 F.4th 290, 296 (8th Cir. 2024) ("Certain statements are not hearsay because they are not offered for their truth. Statements that are commands generally fall within this category." (citations omitted)); *Pillsbury Co. v.*

*Cleaver-Brooks Div. of Aqua-Chem, Inc.*, 646 F.2d 1216, 1217–18 (8th Cir. 1981) (holding that statements "known to have been made by employees of the defendant in the scope of their employment relationship and during the existence of that relationship" were statements of party opponent).

Viewing the record in the light most favorable to Burris, without improperly disregarding Burris's testimony as Baxter does, the Court concludes that a reasonable jury could infer that Baxter's management promoted a policy of discouraging employees from accurately reporting their time. Baxter therefore cannot disclaim knowledge of these employees' conduct.

### 4. De Minimis *Doctrine*

In its Reply, Baxter also asserts that Burris failed to consider the *de minimis* doctrine. *See* Doc. 89, ¶ 2. The *de minimis* doctrine is a defense to liability. Therefore, Baxter bears the burden of showing that it applies; Burris is not required to preemptively rebut it. *Sec'y, U.S. Dep't of Lab. v. E. Penn Mfg. Co., Inc.*, 123 F.4th 643, 647–48 (3d Cir. 2024); *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011); *Cadena v. Customer Connexx LLC*, 107 F.4th 902 (9th Cir. 2024); *Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1042–43 (10th Cir. 2021). And Baxter did not mention this defense in its summary judgment motion, let alone support it with any evidence. Baxter is not entitled to summary judgment on this basis.

### F.  Statute of Limitations

The statute of limitations for unpaid overtime compensation under the FLSA is two years unless the violation is willful, in which case the limitations period is extended to three years. 29 U.S.C. § 255 (a). A violation is willful if "the employer either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Baxter argues that Burris cannot show any willful violations, while Burris argues that fact issues preclude summary judgment on this question.

Baxter asserts that there is no evidence of willfulness because Burris "has presented no evidence that she canceled a meal break deduction and was not paid in accordance with the policy or that anyone at Baxter discouraged her from cancelling a meal break deduction." (Doc. 78, p. 21). Once again, Burris and other Plaintiffs have testified that they were discouraged from cancelling the deduction. Baxter cannot get around this testimony by pretending that it does not exist. Burris has presented sufficient evidence for a reasonable jury to conclude that Baxter knew refusing to pay for work actually performed during an unpaid meal break violated the FLSA but had a policy of discouraging accurate meal deductions anyway. *See Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1083 (8th Cir. 2000) (upholding jury determination of willfulness where the plaintiff's immediate supervisors instructed her not to record overtime, in contradiction of the employer's written policy that she would be paid overtime in accordance with the law).

Moreover, Burris testified that Baxter used the law as a cudgel to get employees to comply with its policy, telling them that the law required they take the unpaid meal break—which is not true—thereby discouraging reporting of work performed during meal breaks while still expecting that work to be performed. (Doc. 77-3, 22:16–23:13 (Burris) (Q: Did you ever get any direct pushback from an individual about canceling a meal deduction? . . . . A: Not one-on-one. We had discussions about how it is against policy, you could get in trouble for violating policy during staff meetings. Q: Okay. And was the

policy that you had to take your meal breaks? A: Yes, sir. Q: Okay. And . . . were you ever given an explanation behind why that was the policy? A: It's the law was all we really got. . . . Q: Were there individuals on your floor who consistently took a meal break, regardless of how crazy it was on the floor? A: No.)); Doc. 82-3, 46:8–13 (Nash) ("[I]f there are too many instances of clocking out no lunch, then at a staff meeting or in a huddle it is addressed that we need to make sure we're getting a lunch break, but then there is no follow up with how we are supposed to do that."). A reasonable jury could credit Burris's testimony and conclude that Baxter knew or recklessly disregarded the issue of whether its conduct was prohibited by the FLSA. If a jury does so conclude, the three-year statute of limitations will apply.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Baxter's Motion to Decertify (Doc. 75) is **DENIED**, and Baxter's Motion for Summary Judgment (Doc. 77) is **GRANTED IN PART AND DENIED IN PART**. The Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs identified in Table A who have not already withdrawn, and Patricia Brindley and Rita McKinney, who Burris concedes did no work for Baxter during the limitations period. These Plaintiffs' claims are therefore **DISMISSED**. Baxter's Motion for Summary Judgment is **DENIED IN ALL OTHER RESPECTS**. Trial in this collective action will be bifurcated, with the issues of liability and willfulness proceeding to trial on January 27th. If liability is established, damages will be determined by a separate trial at a later date.

**IT IS SO ORDERED** on this 19th day of January, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE